UNITED STATES DISTRICT COURT
WESTERN ~~DISTRICT~~ DISTRICT OF TENNESSEE
AT MEMPHIS

Courtney Means #375663                    )

_____          )

_____          )

(Enter above the NAME of the              )  • Officer Sherry Cox
plaintiff in this action.)                • Sgt. Mitchell
        • Warden Jerry Lester             )  • Counselor Norman Layne Jr.
v. • Unit Manager William Bryant             • Chaplain Kemp
• Tennessee Dept. of Corrections, et.al ) • Harry Gilley
• Deputy Commissioner Tony Parker         )
                                          *( Each in their individual and official
• TDOC STG Coordinator Corey Cooper          capacity
• TDOC Classification Coordinator Brandon )
(Enter above the NAME of each Maloney
defendant in this action.)                )

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(42 U.S.C. Section 1983)

I.    PREVIOUS LAWSUITS

A.    Have you begun other lawsuits in state or federal court dealing with the same facts
involved in this action or otherwise relating to your imprisonment?  YES (✓) NO ( )

B.    If your answer to A is YES, describe the lawsuit in the space below.  (If there is more
than one lawsuit, describe the additional lawsuits on another piece of paper, using the
same outline.)

1.    Parties to the previous lawsuit:

Plaintiffs:  Courtney Means _____

_____

Defendants:  Officer Eric Walker _____

_____

1

2.   COURT: (If federal court, name the district; if state court, name the county):

   Western District

3.   DOCKET NUMBER: 07-2384 SHM/egb

4.   Name of Judge to whom case was assigned: Samuel H. Mays, Jr.

5.   Disposition: (For example: Was the case dismissed?  Was it appealed?  Is it still pending?) Jury entered judgment in favor of Defendant

6.   Approximate date of filing lawsuit: May 23, 2007

7.   Approximate date of disposition: September 30, 2009

II.   PLACE OF PRESENT CONFINEMENT: West Tn. State Penitentiary

A.   Is there a prisoner grievance procedure in this institution?  YES (✓) NO ( )

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure? YES (✓)  NO ( )

C.   If your answer is YES,

   1.   What steps did you take? I filed a grievance concerning me being housed improperly.

   2.   What was the result? Due Process was denied, institutional placement deemed inappropriate to grievance procedures.

D.   If your answer to B is NO, explain why not. _____

_____

E.   If there is no prison grievance procedure in the institution, did you complain to the prison authorities?  YES ( )  NO ( )

F.   If your answer is YES,

   1.   What steps did you take? _____

_____

2

2.   What was the result? _____

_____

III.   PARTIES

(In item A below, please your name in the first blank and place your present address in the second blank.  Do the same for any additional plaintiffs.)

A.   Name of plaintiff: Courtney Means

Present address: W.T.S.P, P.O. Box 1150, Henning TN 38041

Permanent home address: _____

Address of nearest relative: Elaine Means 3465 Jenkins, Memphis TN 38118

(In item B below, place the FULL NAME of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank.  Use item C for the additional names, positions, and places of employment of any additional defendants.)

B.   Defendant: Warden Jerry Lester

Official position: Warden

Place of employment: West Tn. State Penitentiary

C.   Additional defendants: Deputy Commissioner Tony Parker, • Officer Sherry Cox
• Sgt. Mitchell
Tennessee Dept. of Corrections et. al, Unit • Counselor Norman Layne
• Chaplain Kemp
Manager William Bryant, TDOC STG • Harry Gilley
Coordinator Corey Cooper, TDOC Classification Coordinator
Brandon Maloney

IV.   STATEMENT OF CLAIM

(State here as briefly as possible the FACTS of your case.  Describe how EACH defendant is involved.  Include also the names of other persons involved, dates and places.  DO NOT give any legal arguments or cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Use as much space as you need.  Attach extra sheets, if necessary.)

_____

On February 12, 2013, Courtney Means was sent to

3

the Security Threat Group Program at Bledsoe Correctional Complex because of the murder of his cousin Alphonso Anderson that took place at Northwest Correctional Complex on November 18, 2012. In May 2013, TDOC revised the #506.26 STG Policy into the Security Management Unit Policy. In July 2013, the STG Program at B.C.C.X was in the process of being shut down, so ALL inmates housed there were being released into general population at prisons all across TDOC.

## CLAIM ONE : 14th Amendment violation "Equal Protection"

(A)      The Equal Protection Clause of the 14th Amendment requires that persons who are similarly situated be treated alike. An equal protection claim may be established by showing that the ~~~~~~~~ Defendant intentionally discriminated against the Plaintiff based on the Plaintiff's membership in a protected class, or that similarly situated individuals were intentionally treated differently (disparately) without a rational relationship to a legitimate state purpose.

Once the STG Program was shut down in July 2013, ALL inmates housed there were sent to compounds across TDOC. Courtney Means arrived at W.T.S.P on July 16, 2013, and was classified to go to general population. Instead he was sent to unit 3B, a unit that was on lockdown. On July 31, 2013, Means was relocated to unit 1D, pending an interview for placement in the SMU Program. According to TDOC Policy #506.26, for an inmate to be placed in the SMU Program

4

a referral has to be filled out on a CR-3809 form. Pursuant to TDOC Policy #506.26.1(VI)(B)(2) - Inmates at prisons without SMU can be referred for placement at another institution per TDOC Policy #403.01 "Administrative Transfer." Once the STG Program was shut down at B.C.C.X, the STG Coordinator there did not make a referral for the SMU Program. Arriving at W.T.S.P, I spoke with STG Coordinator Captain Mumford and he advised me that nothing in my STG Intelligence File warranted my placement in the SMU Program. Other inmates that were transferred with me from the STG Program (Syrus Coleman & Myron McNeil) were transferred to other prisons, but the unit team claim all inmates from the STG Program were automatically placed in the SMU Program. Being that Means was a new arrival at W.T.S.P, he had no incidents at the prison that would indicate any "Disruptive Activity" (assaults with injury, significant criminal activity, strong-arming, STG activity, introduction of contraband, violation of state law, or criminal conspiracy) pursuant to TDOC Policy #506.26.1(IV)(c).

Ⓑ 14th Amendment violation "<u>Due Process</u>"

The Due Process Clause of the 14th Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Liberty interest may arise from the Due Process Clause itself or from state law. Liberty interest created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Determining whether a prison condition is "atypical and significant" requires consideration of the specific facts of each case. The Court considers three guidepost in framing the inquiry:

1) whether the challenged condition mirror those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority

2) the duration of the condition and the degree of restraint imposed

3) whether the state's action will invariably affect the duration of the prisoner's sentence

46

When Means was transferred from B.C.C.X on July 16, 2013, he was not given a reclass per TDOC Policy # 401.05, so his security level and Transitional Assessment Plan (TAP) / Transitional Assessment Plan/Behavioral Intervention Goals (TAP-BIG) remained the same. According to Means' Offender Classification Summary, he was only recommended for Anger Management, Life Skills, and Theraputic Community (Drug Unit). On July 31, 2013, Job Coordinator N. Hayles sent me an Inmate Programming Assigment form (CR-3053) notifying me that I was assigned to the SMU. Arriving at W.T.S.P on July 16, 2013, I never spoke with a Job Coordinator to request any job placements. I never spoke with a counselor to sign me to any registers: BIO1MEH, BIO1MEG, or BIO1MEI. I wasn't on a waiting list for the SMU, so I want to know how was I assigned to the SMU without having an interview?

When Means was placed in SMU, he was entitled to written statement of evidence relied on and of hearing committee's reason for placing him in SMU; failure to provide prisoner with statement of reasons constituted denial of due process. Prison warden may not constitutionally put inmate in segregation, involving solitary confinement or other rigorous conditions of imprisonment, simply because he dislikes inmate or desires to punish him for past misconduct. Arriving at W.T.S.P on July 16, 2013, it was not Means' fault that housing space was limited at the institution. There was no CR-3809 form recommending Means to the SMU per TDOC Policy # 506.26J. On July 31, 2013, Means was assigned to the SMU before having an interview. On August 7, 2013, an interview was conducted placing Means in the SMU, but no reason justifying placement was given. On August 8, 2013, Means appealed the decision of the SMU Board to the Warden Jerry Lester. Means appealed because the placement was improper and the interviewing process was violated because Means didn't get a chance to address the SMU board.

## "Atypical and Significant" Conditions

* **No** contact visits                    * Only received 3 showers a week
* No 5 day a week recreation
* Not able to practice Rastafarian religion
* Not able to obtain Prisoner Program Sentence Credits
* Only able to make 1 (30) minute phonecall a week

Once being placed into the SMU Program, Means was expeditiously moved to Phase 3 due to being at the STG Program prior to arriving at W.T.S.P. This was done in attempt to please Means, knowing I didn't belong in the SMU Program in the first place. Being on Phase 3 of the SMU Program, inmates were entitled to certain freedom for displaying good behavior. Unit Manager Bryant was not operating the SMU Program in accordance to TDOC Policy # 506.26.1 and the memorandum signed by Warden Jerry Lester on April 11, 2013. I filed several grievances and complained to AWO Charles Sweat about the program being ran improperly, but nothing was done. On September 30, 2013, I was refused the opportunity to receive recreation because Unit Manager Bryant said I was cleaning up in a restricted area. On October 1, 2013, I received a write-up for Threatening An Employee, but it was fabricated by Unit Manager Bryant to have me relocated. Reading the write-up (#1049364) you can tell it was done by Bryant. Also on October 1, 2013, I was placed on pending investigation (#1049353) for allegedly being sexually involved with an officer, the same officer who allowed me in the restricted area to clean on the night of September 29, 2013. Because of this incident Unit Manager Bryant placed me on pending maximum security without the approval from the warden, and that's what started the problems. Bryant and the unit team recommended me to start the SMU program over with me only having 2 months to graduate, and the warden approved. According to TDOC Policy # 506.26.1 (VI)(D)- The SMU Review hearings are an opportunity for offenders to present their past and current behavior, any positive changes they are making, and respond to questions, concerns, or requests presented by the SMU Review Board. The SMU Board will conclude the hearing by advising the inmate of what their recommendation to the warden will be. Means was not afforded the opportunity to have a hearing to present his case and/or appeal the decision. When determining if an inmate will continue to the next phase or repeat a phase, the SMU Board will consider the following: TDOC Policy # 506.26.1 (VI)(D)(1-5) - ① Past and Recent Behavior ② Disciplinary Activity ③ Cell Inspections ④ Programming Modules ⑤ STG Activity. It's evident that Means was discriminated against due to the due process violations. Before the incident concerning the restricted area Means had NO disciplinaries, so to cover up the wrongdoing of the officer Means was being punished. As of 10/03/13, I was relocated back to unit 1, suffering from the same civil rights violations.

CLAIM TWO: 8th Amendment violation "Deliberate Indifference"

The 8th Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. A prison official may be held liable under the 8th Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Means claims that placing him in the SMU Program without proper justification created a risk of harm which W.T.S.P employees disregarded in violation of his 8th Amendment right to be free of cruel and unusual punishment.

Ⓐ Yard/Exercise Time - In the SMU Program inmates are afforded outside recreation 2 or 3 times a week, depending on how the schedule rotates that week. No recreation is allowed on the weekend.

Means argues that being in the SMU deprived him of his right to have required yard time. Means also argues that even inmates on maximum security and death row get the opportunity to go outside 5 days a week. The district court noted that there might be an 8th Amendment violation in a case where an inmate is isolated and is deprived of "nearly all fresh air and light." The court also recognizes that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates, and held that where certain inmates were permanently confined virtually the entire day in one cell, received "meager" outside movement, and engaged in minimal prisoner contact, those inmates must receive one hour of outdoor exercise per day, five times a week. In SMU if an inmate is not up and inspection ready at 6:25 a.m. he gets refused for recreation. Another tactic used by the employees to avoid running recreation because inspection starts at 9:15 a.m.

Ⓑ Denial of Good-Time - Means argues that holding him in D-Pod, which is considered transit is depriving him from obtaining his good-time credits. (PPSC)

CLAIM THREE : 1ST Amendment violation; "Free to exercise religion"

Prisoners do not lose the right to free exercise of their religion by virtue of their incarceration. TDOC Policy # 118.01 requires that religious services be available to all inmates practicing all religions. While being in SMU at no time did I get the chance to congregate with a Rastafarian. The irreducible core of the 1ST Amendment guarantee of the right of free exercise of religious beliefs is the right to practice privately any religion. Head Chaplain Mr. Kemp advised me Rastafarians were on site #1 not site #2, so I had to go there if I wanted to practice Rastafarians' beliefs.


CLAIM FOUR : Official Misconduct § 39-16-402
CLAIM FIVE : Official Oppression § 39-16-403
CLAIM SIX : Perjury § 39-16-701

• Official Oppression – A public servant acting under color of office or employment commits an offense who :
  (1) Intentionally subjects another to mistreatment when the public servant knows the conduct is unlawful ; or
  (2) Intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity, when the public servant knows the conduct is unlawful.

• Official Misconduct – A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly :
  (1) Commits an act relating to the servant's office or employment that constitutes an unauthorized exercise of official power ;
  (2) Commits an act under color of office or employment that exceeds the servant's official power ;
  (3) Refrains from performing a duty that is imposed by law or that is clearly inherent in the nature of the public servant's office or employment
  (4) Violates a law relating to the public servant's office or employment ;

* "Public Servant" means a person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of government

• All officers and other persons so employed to control and manage the penitentiary for the state shall, before entering upon the discharge of their duties, take and subscribe the following oath § 41-1-103. The violation of this oath by any of the officers or employees shall be perjury, punishable as in other cases of Perjury § 39-16-701.

On the night of 09/29/13, Officer H. Kiestler gave me a direct order to clean the Control Room in Unit 2. Unbeknownst to Officer H. Kiestler the Control Room is labeled as a restricted area, and inmates are not allowed. The next morning Unit Manager Bryant was upset about finding out I was in the Control Room and threaten to reclass me to maximum custody. On 10/01/13, once Unit Manager Bryant discovered the warden would not approve the recommendation to reclass me to maximum custody, he fabricated a disciplinary report claiming I threatened Officer S. Cox. On 10/03/13, Unit Manager Bryant coerced Counselor Norman Layne and Mental Health Administrator to sign off on a recommendation to send me back to Unit 1 on Phase 1 status. I spoke with Counselor Layne and Harry Gilley and they both advised me that, " The decision was what Unit Manager Bryant wanted."

On 10/07/13, A disciplinary hearing was held for the Threatening An Employee charge issued by Officer Cox. The truth of the matter was Unit Manager Bryant did the disciplinary, but used Officer Cox as a decoy so it wouldn't seem as though he actually was behind it all. It's obvious by observing the disciplinary (#1049364) there were many errors that justified it being dismissed according to TDOC Policy # 502.01, but DHO Sgt. Mitchell ignored the procedures. Sgt. Mitchell heard the lies being told by Officer Cox when being cross-examined by the inmate advisor, but refused to perform his duties as required by law.

With all of the above said "Public Servants" willfully, intentionally, and knowingly engaging in the misconduct that contributed to the ill treatment and abuse beyond the punishment ordered by law and the rules and regulations of TDOC violated the oath § 41-1-103 and should be punished under perjury § 39-16-701.

### ✳✳✳ How Each Defendant Is Responsible ✳✳✳

- To be placed in the SMU the board has to come to an agreement, but ultimately the decision is up to <u>Unit Manager William Bryant.</u> The actions or lack thereof from Bryant failed to intervene, correct, and prevent the Due Process and Deliberate Indifference was done maliciously and sadistically and constituted cruel and unusual punishment. Bryant used his official position to order subordinates to lie on several occasions, which exceeded his official power.

- <u>Officer Sherry Cox</u> committed an offense with intent to harm by refraining from performing duties when she knowingly lied about the facts of disciplinary # 1049364. She knew by lying it would cause me harm, but failed to report the vindictive behavior of Bryant.

- <u>DHO Sgt. Mitchell</u> committed an offense with intent to harm by refraining from performing duties when he witnessed the misconduct pertaining to disciplinary # 1049364

- <u>Counselor Norman Layne</u> and <u>Mental Health Administrator Harry Gilley</u> intentionally and knowingly committed an act as SMU Board members by deliberately participating in the Due Process violation.

- <u>Chaplain Kemp</u> was the head chaplain at W.T.S.P and responsible for the religious activity in the SMU.

- <u>Warden Jerry Lester</u> is to be held liable under the § 1983 respondeat superior. Warden Lester encouraged the specific instance of misconduct or in some other way directly participated in it. Lester at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the SMU Board.

- <u>Deputy Commissioner Tony Parker</u> had the opportunity to overturn the SMU placement by W.T.S.P in the appeal process. He failed to perform a function he was legally obligated to perform, so he too is liable under the § 1983 respondeat superior.

- <u>Tennessee Department of Corrections, et. al</u> is responsible because their official policies (TDOC Policy # 506.26, 506.26.1, 508.04, 401.05, & 505.07) caused their employees to violate my constitutional

4g

rights. According to the definition "municipal liability," TDOC pursued an official policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and that policy was adopted by the official makers of policy with "deliberate indifference" towards the constitutional rights of me and others. When TDOC changed the STG Policy # 506.26 TCA 4-3-603 and 4-3-606 into the SMU Policy # 506.26.1 TCA 4-3-603 and 4-3-606, my constitutional rights were violated.

- Director of Classification Brandon Maloney and TDOC STG Coordinator Corey Cooper is responsible because once the STG Program was shut down at B.C.C.X on 07/16/13, it was their duty to assure my placement in general population like the other inmates that were released because of the shutdown.

V.    RELIEF

(State BRIEFLY exactly what you want this Court to do for you.  Make NO legal arguments.

Cite NO cases or statutes.)

_____ Issue A Declaratory Judgment Stating: _____

_____

A) The unjustified segregation to the Plaintiff by W.T.S.P/
Unit Manager William Bryant violated the Plaintiff's
rights under the 8th, 14th, 1st Amendment to The

I (We) hereby certify under penalty of perjury that the above complaint is true to the best of
my (our) information, knowledge and belief.

Signed this _____ 16 _____ day of _____ October _____, 20 13 .

_Courtney Means_
Signature of plaintiff(s)

5

United States Constitution and constituted cruel and unusual punishment.

B)    Award Compensatory Damages In The Following :
amounts : Each in their individual and official capacity

1. $25,000 against EVERY defendant for intentionally and knowingly abusing their office for improper purposes; intentionally and knowingly using their office to violate civil rights of prisoners; and committing acts of perjury

2. $75,000 against defendant William Bryant for the mental and emotional injuries sustained as a result from the due process violation equal protection violation, and cruel and unusual punishment.

3. $50,000 against defendants Jerry Lester, Corey Cooper, and Brandon Maloney for their gross negligence and egregious failure to protect by condoning the due process violation and equal protection violation by William Bryant.

4. $100,000 against defendants Tennessee Dept. Of Corrections and Tony Parker for the mental and emotional injuries resulting from their failure to provide adequate supervision at W.T.S.P, and for their failure to properly train employees in the SMU, for the failure to protect Plaintiff's civil rights under the United States Constitution, AND as chief executives officers under TN law, they posses final authority with respect to training their employees and, thus their actions constitute TDOC policy on subject for imposing municipal liability.

C)    Award Punitive Damages In The Following
amounts : Each in their individual and official capacity

1. $100,000 against defendants William Bryant, Jerry Lester, Tony Parker, & TDOC

2. $25,000 against defendants Sherry Cox, Harry Gilley, Norman Layne, Chaplain Kemp, Sgt. Mitchell, Corey Cooper, and Brandon Maloney

** The Plaintiff had just experienced a tragic death of a family member in prison and was diagnosed as a (MOOD D/o NOS 293.90) mental health patient. This situation put me under extreme distress and W.T.S.P diagnosed me as (Bipolar D/o Nos 296.80).